# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN   DIVISION

|  |  |  |
|---|---|---|
| | * | |
| CENTRAL OKLAHOMA PIPELINE, | * | |
| INC. d/b/a CENOK PIPELINE, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | NO: 4:09CV00305   SWW |
| VS. | * | |
| | * | |
| HAWK FIELD SERVICES, LLC, ET | * | |
| AL. | | |
| Defendants | | |

## ORDER

Before the Court is Plaintiff's motion for remand (docket entry #17) and Defendant's

response in opposition (docket entry #22).   After careful consideration, and for reasons that

follow, the motion for remand will be granted.

## I.

On March 18, 2009, Plaintiff Central Oklahoma Pipeline, Inc. ("CenOk") filed this action

in state court, asserting breach of contract claims against Hawk Field Services, LLC ("Hawk"),

Petrohawk Operating Company, Petrohawk Energy Corporation, and Petrohawk Energy

Corporation (collectively, "Petrohawk Defendants").  CenOk also asserts a negligence claim

against Separate Defendant Crafton, Tull, Sparks & Associates, Inc. ("Crafton").

Pertinent portions of the complaint can be summarized as follows.  In July 2008, Hawk

invited contractors to bid on work necessary to install steel pipeline in Arkansas.  CenOk

submitted successful bids and entered contracts with Hawk and the Petrohawk Defendants for

construction of northern and southern sections of the pipeline.[1]   Hawk and the Petrohawk

Defendants inspected CenOk's work on a daily basis and approved all work performed. CenOk

billed for labor and materials it provided, and Hawk refused to pay a substantial portion of the

amount billed.

      During a meeting that took place on January 13, 2009, Hawk informed CenOk that it

would be penalized several million dollars for failure to complete work on time.  CenOk

responded that it should not be penalized for delays caused by inclement weather and Hawk's

failure to provide construction materials in accordance with contract provisions.  Several days

after the meeting, Hawk informed CenOk that it would be paid soon and would not be penalized

for untimely work.  Based Hawk's assurances, CenOk continued work.  However, CenOk never

received payment from Hawk.

      On January 31, 2009, as CenOk was nearing completion of its work, Hawk ordered

CenOk to cease all work and warned that  unless CenOk  provided documentation that it was

licensed and had paid its subcontractors on a timely basis, a replacement contractor would be

hired.

      On February 2, 2009, CenOk informed Hawk that (1) the Arkansas Secretary of State had

revoked CenOk's "certificate of authority" for failure to pay franchise taxes, but CenOk paid the

taxes due and the certificate had been reinstated and (2) CenOk could not pay its subcontractors

until it received payment.  Later that day,  Hawk terminated its contracts with CenOk and refused

to pay CenOk on the ground that the company was not licensed by the Arkansas Contractor's

---

[1]CenOk alleges that the Petrohawk Defendants meet the definitions of "Company" and
"Owner" set forth in the contracts between CenOk and Hawk and are subject to the terms of the
contract "just like Hawk."  Docket entry #3, ¶ 30.

Licensing Board.

CenOk filed this action in state court on March 18, 2009, alleging that Hawk and the

Petrohawk Defendants breached the contract and that CenOk was not required to be licensed by

the Arkansas Contractor's Licensing Board.  Alternatively, CenOk charges that Crafton neglected

its duty as project engineer to inform CenOk that it was required to obtain such licensing.


## II.

On April 24, 2009,  Defendants removed the case to this federal court based on diversity

of citizenship.  CenOk moves to remand the case back to state court, asserting that the diversity

requirement is not met because CenOk is a citizen of Oklahoma and Arkansas, and Crafton, a

proper defendant, is also a citizen of Arkansas.[2]  Defendants respond that even if CenOk is a

citizen of Oklahoma and Arkansas, CenOk fraudulently joined Crafton in an effort to defeat

federal jurisdiction.

Because Defendants removed this action to federal court, they bear the burden to establish

jurisdiction by the preponderance of the evidence, *see Altimore v. Mount Mercy College*, 420

F.3d 763, 768 (8th Cir. 2005)(citation omitted), and all doubts about federal jurisdiction must be

resolved in favor of remand.  *See Central Iowa Power Co-op. v. Midwest Independent*

*Transmission System Operator, Inc.*  561 F.3d 904, 912 (8th Cir. 2009)(citing *Dahl v. R.J.*

*Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir.2007).

---

[2]CenOk also asserts that Defendants have provided no proof that Texas is Petrohawk
Operating Company's principal place of business and state that the company uses an address in
Oklahoma.  However, in response in opposition to remand, Defendants provide substantial
evidence that Texas is Petrohawk Operating Company's principal place of business.  *See* docket
entry #22, Ex. #3.

**CenOk's Citizenship**

District courts have diversity jurisdiction over civil actions when the amount in controversy is greater than $75,000 [3] and when the citizenship of each plaintiff is different from the citizenship of each defendant. *See* 28 U.S.C. § 1332(a).  And in the case of a removed action, diversity of citizenship between the parties  must exist both when the state complaint is filed and with the petition for removal is filed.  *See Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*  263 F.3d 816, 819 (8th Cir. 2001)(citing 28 U.S.C. § 1447(e) and *Koenigsberger v. Richmond Silver Mining Co.*, 158 U.S. 41, 49-50, 15 S. Ct. 751 (1895)).

For the purpose of diversity jurisdiction, a corporation may be the citizen of two states: the state in which the corporation is incorporated and the state in in which it maintains its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  However, a corporation can have only one principal place of business for the purposes of diversity citizenship.  *See id*.

Regarding the citizenship of the parties, the notice of removal states that Defendant Hawk is an Oklahoma LLC with its sole member being Defendant Petrohawk Energy Corporation,  a Delaware corporation with its principal place of business in Texas; Defendant Petrohawk Operating Company is a Texas corporation, with its principal place of business in Texas; Defendant Petrohawk Operating, Inc. is a fictitious name for Petrohawk Operating Company; Defendant Petrohawk Operating, LLC does not exist; Defendant Crafton is an Arkansas corporation, with its principal place of business in Arkansas; and "on information and belief" Plaintiff CenOk is an Oklahoma corporation, with its principal place of business in Oklahoma.

In support of remand, CenOk asserts that diversity of citizenship between the parties is

---

[3]CenOk does not dispute that the amount  in controversy exceeds $75,000.

lacking because CenOk and Crafton are both citizens of Arkansas.  CenOk presents the affidavit

of Roger Allen Melott, Cenok's secretary and treasurer, stating that CenOk is an "Oklahoma

corporation," with its principal  place of business in Arkansas.    Docket entry #17, Ex. D.

Defendants argue that CenOk's very name signals an affiliation with Oklahoma and that

the complaint is void of allegations indicating that CenOk's principal place of business is

Arkansas.  Defendants note that the in the complaint, CenOk describes itself as a  "pipeline

contractor from Oklahoma" and alleges that it has only been authorized to do business in

Arkansas since  2007.   Finally, Defendants assert that Mellot's "conclusory" affidavit fails to

contradict Defendants' allegation in the notice of removal that CenOk's principal place of

business is Oklahoma.

Even assuming that Oklahoma was CenOk's original, principal place of business,

jurisdiction of the Court depends on the state of facts at the time plaintiffs filed the complaint.  It

is possible that, sometime before commencing this action, CenOk shifted its principal place of

business to Arkansas as a result of the Fayetteville Shale Play.[4]  Furthermore, the fact that the

complaint omits CenOk's principal place of business is not relevant.  In diversity cases originally

filed in federal court, the plaintiff shoulders the burden to prove that the jurisdictional

requirements are met, and a complaint must specify a corporate party's state of incorporation and

its principal place of business.  *See Dale v. Weller*, 956 F.2d 813, 815 (8th Cir. 1992).  However,

in this removed case, Defendants, as the parties seeking a federal forum, have the burden to

---

[4]The Eighth Circuit has applied the "total activity" test for determining a corporation's principal place of business for diversity jurisdiction purposes.  *See Capitol Indemnity Corp. v. Russellville Steel Co., Inc.*, 367 F.3d 831, 836 (8th Cir. 2004).  Under that test, a court may make reasonable inferences that flow from undisputed facts and may look beyond the evidence and draw on general knowledge of commonly known information.  *See id.*

establish jurisdiction by a preponderance of the evidence. *See Yeldell v. Tutt*, 913 F.2d 533, 37 (8th Cir. 1990).

Based on the parties' respective filings, the Court finds that Defendants have failed to meet their burden to show, by a preponderance of the evidence, that complete diversity exists between the parties.

### Fraudulent Joinder

Defendants assert that even if CenOk and Crafton have Arkansas citizenship in common, that jurisdictional defect should be ignored because CenOk fraudulently joined Crafton in order to defeat diversity jurisdiction.

The Eighth Circuit has held that when diversity jurisdiction is lacking, "the [defendant] may avoid remand–in the absence of a substantial federal questions--only by demonstrating that the non-diverse party was fraudulently joined." *Fila v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003)(citing *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). The Court has defined fraudulent joinder as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Fila*, 336 F.3d at 809.

In determining whether joinder is fraudulent, "a proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." *Id.* at 810. Joinder is fraudulent only when applicable state precedent *precludes* the existence of a cause of action against a non-diverse defendant. *See id.* at 810. If there is a colorable cause of action–that is, if state law *might* impose liability on the non-diverse defendant under the facts alleged in the complaint–there is no fraudulent joinder. *Id.* (quoting *Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 92 F. Supp. 2d 891, 903 (N.D. Iowa 2000)).

6

CenOk alleges that, assuming that it was required to have a license issued by the Arkansas Contractor's Licensing Board, Crafton was negligent in failing to inform CenOk that such a license was required. *See* Compl. at ¶ 80. CenOk alleges that Crafton prepared the contract drawings and served as the engineer for the pipeline projects at issue and was therefore obligated, pursuant to Ark. Code Ann. § 17-25-313, to inform CenOk that a license was required. *See* Compl. at ¶¶ 25-26, 78-81. Arkansas Code § 17-25-313 provides:

> All architects and engineers preparing plans and specifications for work to be contracted in the State of Arkansas shall include in their invitation to bidders and in their specifications a copy of this chapter or such portions thereof as are deemed necessary to convey to the invited bidder, whether he or she is a resident of this state or not, the information that it will be necessary for him or her to have a certificate of license with the proper classification from the Contractors Licensing Board before his or her bid is submitted.

Ark. Code Ann. § 17-25-313.

In support of their fraudulent joinder charge, Defendants assert that Crafton had no duty under § 17-25-313 because Crafton "did not prepare any architectural or engineering plans or specifications" and "never provided any invitations or specifications to bidders." However, CenOk alleges that Crafton created engineering specifications for the contract work at issue, and the Court must resolve all facts in CenOk's favor. *See Filla*, 336 F.3d at 811.

Under Arkansas law, in order to prevail on a claim of negligence, a plaintiff must prove that the defendant owed a duty to the plaintiff, the defendant breached that duty, and the breach was the proximate cause of the plaintiff's injuries. *See Branscumb v. Freeman*, 360 Ark. 171, 179, 200 S.W.3d 411, 416 (2004). Additionally, Arkansas law provides that the violation of a statute, although not necessarily negligence, is evidence of negligence that may be considered by a jury. *See* Arkansas Model Jury Instruction 4th 601; *Berkeley Pump Co. v Reed-Joseph Land Co.*,

279 Ark. 384, 653, S.W.2d 128 (1983).  Here, CenOk alleges that Crafton breached a duty to

provide notice regarding licensing requirements, required under § 17-25-313, which proximately

caused CenOk economic damages.

Citing *Branscumb v. Freeman*, 360 Ark. 171, 200 S.W.3d 411 (2004),  Defendants argue

that Arkansas courts are "traditionally, and without exception, hostile to the idea that . . . statutes

requiring an overt act create a duty actionable in negligence when the statute (a) says nothing

about liability, and (b) there is no statutory duty of care."

In *Branscumb*, the Supreme Court of Arkansas declined to impose civil liability on a

motor vehicle owner *solely* for failing to insure his  motor vehicle, when his "failure to insure the

vehicle could never be the proximate cause of the accident and resulting injuries . . . ."

*Branscumb*, at 360 Ark. 179, 200 S.W.3d 416.   Additionally, the Court found that the plain

language and legislative history of the statutory provisions involved made clear that it is the

operator of a motor vehicle, not the owner, who is the focus of the statutory provision.  *Id*.  The

Court finds that CenOk's claim against Crafton has little in common with the claim pursued in

*Branscumb*, which the Arkansas Supreme Court recognized as an attempt to create a negligence

per se cause of action.  *See Branscumb*, 360 Ark. at 179, 200 S.W.3d at 417.

In this case, the Court finds  a reasonable basis in law and fact for predicting that liability

might be imposed upon Crafton.  Even in situations where the sufficiency of a complaint against a

non-diverse defendant is questionable,  "'the better practice is . . . not to decide the doubtful

question in connection with a motion to remand but simply to remand the case and leave the

question for the state courts to decide.'"  *Fila,* 336 F.3d at 811(quoting *Iowa Public Service Co. v.

Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)).

### III.

For the reasons stated, the Court finds that subject matter jurisdiction is lacking and that

this case must be remanded to state court pursuant to 28 U.S.C. § 1447(c).  IT IS THEREFORE

ORDERED that Plaintiffs' motion for remand (docket entry #17) is GRANTED.  This cause of

action is hereby REMANDED to the Circuit Court of Van Buren County, Arkansas, pursuant to

28 U.S.C. § 1447(c).

IT IS FURTHER ORDERED that all remaining motions pending in this case are DENIED

AS MOOT, without prejudice to any right to resubmit the motions in state court.

IT IS SO ORDERED THIS 30TH DAY OF JULY, 2009.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE